IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LINDA BERKLEY                                                                    PLAINTIFF

V.                                                        NO.: 3:19-cv-217-MPM-JMV

LAFAYETTE COUNTY, MISSISSIPPI, ET AL.                            DEFENDANTS

REPORT AND RECOMMENDATION

Consistent with this Court's order of September 15, 2021 [205], a hearing on the

Defendants' motions for sanctions [148], seeking, among other relief, that this action be dismissed,

was held on October 18, 2021. Based on the representations made by counsel at that hearing and

my findings as set out in my earlier order [205], incorporated herein by reference, the undersigned

reports and recommends that sanctions in the form of attorney fees and expenses should be

awarded against the Plaintiff. However, the issue of what further sanction(s), if any, for spoliation

of evidence is/are warranted should be carried forward with the case for further development of

evidence concerning the circumstances occasioning the destruction of relevant documents, as

discussed below more fully.

To begin, I find that, following the hearing, some additional observations to those made in

my prior order [205] are warranted. Those observations concern the still unexplained

circumstances surrounding the nondisclosure – and apparent destruction – of relevant documents.

By way of a brief background, Plaintiff filed her complaint on September 24, 2019, alleging that

she was one of several heirs of Flora Porter, who owned a parcel of real estate in Oxford,

Mississippi, at the time of her death in 1999. Beginning with tax year 2016, the city and county *ad*

*valorem* taxes on the property were not paid, and Plaintiff received notice that the property would

be auctioned in August 2017 as a result. *See* Pl. Dep. 60. Plaintiff, a graduate of the Barney Fletcher

School of Real Estate, testified that, in fact, by 2018 she called the taxing authorities in Oxford

"plenty of times" because she knew taxes for 2016, due in 2017, had not been paid, and she knew

she would have to pay the overdue taxes in order to redeem the property in 2019 from the 2017

tax sale. *See id.* at 10 and 109. On July 23, 2019, as the time for redeeming the property for

nonpayment of 2016 taxes approached, she again called the city and county taxing authorities. She

asserts that she was misled during these calls by the authorities who falsely told her that "the

property taxes had not been paid by anyone and that the property had not been sold for taxes."

Compl. at 5. As a consequence of being allegedly misled by the Defendants during these phone

calls, Plaintiff asserts that she did not pay the past due taxes for 2016. On August 30, 2019, and

September 9, 2019 (for the city and county, respectively) the property became vested in the third-

party tax acquirer, Thik and Thin Construction LLC, due to the nonpayment of the 2016 taxes and

the non-redemption from the resulting tax sale. The Plaintiff testified that she learned of these facts

only after she and her husband travelled to Oxford on September 20, 2019, to "gather evidence"

presumably for the instant lawsuit that was filed either the next day or a few days later. *See* Pl.

Dep. at 111-112.

At her deposition taken on May 24, 2021, Plaintiff expounded on the content of the alleged

misleading 2018 and 2019 calls with the Defendants. Plaintiff testified to several different

versions. On the one hand, she testified she was "lied to" and "exactly" told she owed no taxes on

the property, and "don't worry about it, you don't have to pay the taxes." Pl. Dep. at 109. On the

other, she testified that what she was told was "vague," or "bogus," or a "bunch of bullshit." *Id.* at

106, 107, and 109. Importantly, Plaintiff testified that she had theretofore undisclosed notes of the

content of each of the alleged calls. *Id.* at 106. Plaintiff described these notes and how she

maintained them in some detail: she explained that she kept a record, in yearly notebook format,

of the date and exact time of each call she made in 2018 and 2019, to whom she spoke, and what was said. Plaintiff testified at her deposition she was certain she still had these formerly undisclosed documents and could find them to produce to the defense after her deposition. However, as discussed in my prior order, following her deposition, Plaintiff's counsel informed the defense that the newly disclosed notes of the content of the calls in 2018 and 2019, (as well as additional information regarding the taxes and expenses related to the subject property that Plaintiff testified also existed) had, without further explanation, gone missing.

At the recent hearing concerning the nondisclosure of the existence of these documents and their sudden remarkable unexplained disappearance after Plaintiff's deposition testimony, Plaintiff's counsel made a host of contradictory and nonsensical representations to the court. For example, he informed the court that he recognized the significance of the notes of the content of the phone calls when he filed the instant suit in Sept. 2019, and therefore, sought to obtain them from his client (who is also his wife) at that time, but he learned then that they no longer existed. He offered no explanation of why. Then, he stated that he later undertook to locate these documents for initial disclosure in August 2020, but he learned then they no longer existed. Initially, he represented he did not know why the documents no longer existed, but then he surmised that the documents might have been shredded in February 2020 when he moved his law office. He offered no explanation of why, if the notes had already disappeared as early as September 2019, they could have been around to be shredded in Feb. 2020. Nor did he explain why he was allegedly looking for them thereafter in August 2020 even though he allegedly knew in Sept 2019, when suit was filed, they no longer existed. Nor did he explain why Plaintiff testified explicitly to having the documents in her possession as late as her deposition on May 24, 2021, and he did not clarify the record at the deposition. Instead, it was agreed the notes would be produced after the deposition.

In short, in my view, Plaintiff's counsel offered no credible excuse nor rational explanation for: (1) the repeated failure to have disclosed to the Defendants that these documents ever existed; (2) the affirmative sworn misrepresentation in written discovery responses that no such documents existed; and/or (3) for the destruction or disappearance of the documents. The plaintiff did not testify at the hearing.

I.      Applicable Law

Spoliation of evidence is "the destruction or significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010)). "Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct." *Rimkus Consulting Grp, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 611 (S.D. Tex. Feb. 19, 2010) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)).

To find spoliation of evidence, the court must first determine: (1) the existence of a duty to preserve the information; (2) a culpable breach of that duty; and (3) resulting prejudice to the innocent party. *See Rimkus*, 688 F. Supp. 2d at 612, 615–16. The Fifth Circuit permits "an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of bad faith or bad conduct." *Guzman*, 804 F.3d 713 (citing *Condrey v. SunTrust Bank of Georgia,* 431 F.3d 191, 203 (5th Cir. 2005) (internal quotation marks omitted). With respect to spoliation, bad faith is "destruction for the purpose of hiding adverse evidence." *Guzman*, F.3d at 713.

Sanctions for spoliation of evidence include "awarding attorney fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, excluding evidence or expert

testimony, striking pleadings, entering a default judgment, and dismissing the case entirely." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 772, 801 (N.D. Tex. 2011) (citing *Ashton v. Knight Transportation, Inc.*, 772 F.Supp.2d 772, 801 (N.D. Tex. Feb. 22, 2011). In the Fifth Circuit, an adverse inference jury instruction for spoliation of evidence is appropriate where a showing is made that the spoliating party "intentionally destroy[ed] important evidence in bad faith [and] did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir.2008) (quoting *Russell v. Univ. of Tex.*, 234 Fed. Appx. 195, 207 (5th Cir.2007)).

      II.     Analysis

         1.  Duty to Preserve

A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation. *See Rimkus* 688 F. Supp. 2d at 612. Once litigation is reasonably anticipated, a potential party to that litigation "'must not destroy unique, relevant evidence that might be useful to an adversary.'" *Toth v. Calcasieu Parish*, No. 06–998, 2009 WL 528245 at *1 (W. D. La. 2009) (citing *Zubulake v. UBS Warburg LLC*, 220 F. R. D. 212, 216 (S.D.N.Y.2003)). The duty to preserve evidence is "a duty owed to the court, not to the party's adversary, and thus spoliation is an abuse of the judicial process." *Ashton*, 772 F. Supp. 2d at 800.

Here, it is elementary that the Plaintiff had a duty to preserve the notes relating to the content of the alleged calls, the content of which is specifically relied on by plaintiff in her complaint as having resulted in her failure to redeem the property from the 2016 tax sales.

         2.  Breach of the Duty to Preserve

To find breach of the duty to preserve, the party "must have acted in bad faith or with a "culpable state of mind" in failing to preserve the. . . evidence at issue." *Consolidated Aluminum*

*Corp. v. Alcoa, Inc.*, 244 F. R. D. 335, 333-34 (M.D. La. July 19, 2006); *see also King v. Illinois*

*Central R.R.*, 337 F.3d 550, 556 (5th Cir. 2003). Bad faith has been described as conduct involving

"fraudulent intent and a desire to suppress the truth"[1] and as "destruction for the purpose of

depriving the adversary of the evidence." *Allstate Texas Lloyd's v. McKinney,* 964 F. Supp. 2d 678

(S.D. Tex. Jul. 24, 2013) (finding bad faith where evidence ordering destruction of relevant

documents was found in contradiction to previous deposition testimony) (internal citations

omitted). "Mere negligence is not enough, for it does not sustain an inference of consciousness of

a weak case." *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (finding that

the destruction of records did not constitute bad faith as the records were destroyed under routine

procedures and well in advance of litigation).

As discussed above, here, the Plaintiff testified to the existence of the notes regarding the

alleged calls between herself and the Defendants in her deposition on May 24, 2021. She described

in some detail the current existence of these notes and how they contained information regarding

the "misleading information" allegedly given to her, leading to this suit. Yet, no reasonable,

believable explanation has been offered for just when and why these notes have, despite this sworn

testimony, gone missing/been destroyed. Nor has any reasonable explanation been offered for the

failure to have timely disclosed these documents or this information.

3. Prejudice

This court divides the "relevance" and "prejudice" factor of the adverse inference analysis

into three subparts: "(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence

would have supported the inference sought; and (3) whether the nondestroying party has suffered

---

[1] *See Ashton*, 772 F. Supp. at 796. The court found that the truck driver's immediate replacement of tires following an accident and the absence of communication records for the time surrounding the accident provided facts and circumstantial evidence to establish that the "Defendants engaged in spoliation and did so in bad faith." *Id.* at 803.

prejudice from the destruction of the evidence." *See Consol. Aluminum Corp.*, 244 F. R. D. at 346. "The destroyed evidence is "relevant" if a "reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Allstate Texas Lloyd's*, 964 F. Supp. At 685 (citing *Ashton*, 772 F. Supp. 2d at 801). Prejudice can range from "an inability to prove claims or defenses to little or no impact on the presentation of proof." *Rimkus*, F. Supp. 2d at 613.

Here, the disappearance or destruction of the notes does not allow the Defendants to examine, defend, or refute Plaintiff's claim that false and misleading information was given to the Plaintiff by Defendants on the tax status of the property in question; as such, there is prejudice.

III.    Conclusion

In short, the undersigned reports that Plaintiff improperly and unjustifiably failed to preserve relevant evidence. Further, this failure was not disclosed to the defense despite an obligation to do so. This conduct, together with all the other conduct outlined in my prior order and incorporated herein, warrant a recommendation that an award of sanctions in the form of reasonable attorney fees and expenses incurred by defendants' in bringing the  motion to compel, including attending the hearing thereon, be made. However, as for a further sanction for spoliation of evidence, including in the form of dismissal or adverse inference, it is my recommendation that that matter remain open pending further factual development, including in the form of plaintiff's sworn testimony at trial, if any.

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within fourteen (14) days of this date. Failure to timely file written objections to the proposed findings

conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this, the 3rd day of December, 2021.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**