IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LINDA BERKLEY                                                                    PLAINTIFF

V.                                                                          NO: 3:19CV217-MPM-JMV

LAFAYETTE COUNTY, MISSISSIPPI,
the CITY of OXFORD, MISSISSIPPI,
CHANCERY CLERK ASHLEY ATKINSON,
and CITY CLERK SHERRY WALL                          DEFENDANTS

**ORDER**

This cause comes before the court on the motions of defendants Lafayette County and City of Oxford, along with their individual defendant employees, for summary judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff Linda Berkley has responded in opposition to the motions, and this court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is, *inter alia*, a § 1983 action arising out of allegations that plaintiff was not provided with notice of a tax sale of property she owned in Oxford. The property in question originally belonged to Flora Porter, plaintiff's mother, who died intestate years prior to this litigation. Plaintiff was one of Porter's heirs, and it is undisputed that the required taxes were not paid on the property she inherited from 2016 to 2019. As a result, Lafayette County and the City of Oxford auctioned the property off at an August 28, 2017 public tax sale, and it was purchased by defendant Thik and Thin Construction, LLC. In her complaint, plaintiff alleges that she was not provided with redemption notices of the sale and that this failure amounted to a due process violation. For its part, however, the City of Oxford claims that it had no way of knowing that plaintiff was an heir, since "no estate was ever probated in chancery court, no heirship

1

determination was ever made, and no deeds transferred interest in the property from the estate to [plaintiff] or any of her siblings." [City of Oxford's brief at 1]. The City also emphasizes that "redemption notices were sent to her niece, who requested to be listed as the person to receive tax notices on the tax assessor's rolls because Berkley was not paying the taxes." [*Id.*]

It should be emphasized that the facts surrounding the inheritance and ultimate disposition of the property at issue in this case are quite complex, and this court is aware that, at the summary judgment stage, it is required to view the record in the light most favorable to plaintiff, as the non-moving party. That being the case, this court will assume for the purposes of this order that there are at least fact issues regarding whether the municipal defendants in this case were at least negligent in failing to send redemption notices to plaintiff. This court notes for the record, however, that plaintiff and her fellow heirs appear to have contributed greatly to the confusion which arose in this context by failing to follow the proper legal steps after Porter's death to clearly establish, in public records, who the legal owners of the property in question were. At any rate, this court can find absolutely nothing in the record which might lead it to conclude that either the City of Oxford or Lafayette County acted with anything more than simple negligence in this case, and, as discussed below, this fact is fatal to plaintiff's federal claims in this case.

This court's conclusion that plaintiff's federal claims lack merit leads it to question, once again, why it was filed in federal court. Since its very first order entered in this case, this court has not questioned that the facts alleged in the complaint might legitimately have been the subject of state court litigation, but it has repeatedly questioned how federal law offers plaintiff any sort of remedy. [*See* July 13, 2020 order at 2; February 1, 2021 order at 3]. This is significant, since federal question jurisdiction (along with supplemental jurisdiction over state

law claims) is the sole jurisdictional basis cited by plaintiff in any of the three complaints she has filed in this case.[1]

Common sense suggests that, if simple clerical errors on the part of municipal employees in performing their official duties were sufficient to give rise to § 1983 lawsuits alleging constitutional violations, then federal courts would be swamped with litigation arising from such errors. In reality, however, this court cannot recall a single case having come before it which arose out of the sort of mundane and unremarkable facts at issue in this case. The sheer novelty of the federal claims raised by plaintiff in this case caused this court to question their legal basis from the very start, and it has repeatedly given her opportunities to support her claims with 1) citations to authority supporting federal claims in similar contexts and 2) actual facts developed in discovery regarding any sort of heightened misconduct by defendants. As discussed below, plaintiff has failed on both counts.

It should be noted that, in light of the egregious discovery and other violations described in the Magistrate Judge's sanctions orders in this case, this court may have demonstrated too much patience with plaintiff in allowing her to conduct discovery on these issues. For example, the Magistrate Judge found in her September 2021 sanctions order that:

> To begin, Plaintiff's conduct and that of her counsel (who is also her husband), from all appearances, has been in flagrant disregard of the truth and their discovery obligations. This conduct includes the following: provision of demonstrably false sworn interrogatory

---

[1] There is no assertion of diversity jurisdiction in the Second Amended Complaint; only a reference to federal question jurisdiction and to supplemental jurisdiction over related state law claims. [Second amendment complaint at footnotes 1 and 2]. In her briefing, plaintiff likewise argues that this court should exercise supplemental jurisdiction over her state law claims, and not original diversity jurisdiction. [*See, e.g.* Plaintiff's response to Thik and Thin's motion to dismiss at 5]. It is unclear to this court whether, by so arguing, plaintiff wished to avoid dealing with arguments that she (a Tennessee resident) should be considered a Mississippi domiciliary for diversity purposes, or whether she might have had concerns that the addition of indispensable parties would destroy diversity jurisdiction. At any rate, this court simply deals with her allegations as it finds them, and there is no mention of diversity jurisdiction in the complaint.

3

> answers; numerous false answers under oath by Plaintiff at her deposition; improper refusal to answer questions at her deposition, including at the improper instruction of her counsel; failure to disclose documents and/or spoliation of same and an alarming willingness by Plaintiff and her counsel to double down on improper conduct to evade responsibility for it, such as misrepresenting legal authorities to the court, the making of specious legal arguments, and the misuse of errata sheets. * * *
>
> In her interrogatory responses, Plaintiff falsely answered that she had not received any physical or emotional injury for which she had been treated since August 2014, nor has she received any medication for the same. These answers were false, as Defendant uncovered that Plaintiff had, in fact, sought treatment for physical injury since 2014 on numerous occasions, including treatment alleged to have arisen from a 2014 auto accident; a 2015 accident at Walmart; a 2015 food poisoning episode; 2016 auto accident; another accident at Walmart in 2017; and a slip and fall injury at Regus in 2020. She had also received multiple prescriptions on account thereof.
>
> In like fashion, Plaintiff falsely swore in her interrogatory responses that, aside from the instant lawsuit, she had been a participant in only three lawsuits. In reality, she has been a participant in numerous such suits. Records uncovered by the Defendants reveal at least the following: *Methodist Healthcare v. Linda Berkley*, CT- 005274-06 (Shelby County, TN Circuit Court 2006); *St. Francis Bartlett v. Linda Berkley*, HL- 1550-18 (Shelby County, TN Circuit Court 2018) (hospital lien); *Linda Berkley v. Regus PLC*, CT-0734-21 (Shelby County, TN Circuit Court 2021); and *Deutsche Bank National v. Drayton Berkley, et al.* (Shelby County, TN Circuit Court 2017) (foreclosure and warrant detainer for eviction). * * *
>
> Plaintiff's false deposition testimony regarding her participation in other litigation was so brazen as to include a denial by her that she was even the "Linda Berkley" noted by defense counsel to have filed suit in 2021 against Regus for a slip and fall injury. She gave this remarkable testimony even though defense counsel pointed out that that lawsuit was also filed by her husband as counsel-and only a very short time before she gave her deposition in the instant case.

[Slip op. at 1-3].

This is merely a small sampling of the Magistrate Judge's findings regarding dishonest behavior by plaintiff and her counsel spouse in this case, but it provides a rather clear picture regarding the manner in which they have litigated this action. Indeed, based upon the Magistrate Judge's findings, it now seems likely that plaintiff's claims in this case are based less upon a good faith belief that she has valid federal claims to assert, and more upon a bad faith effort by a very experienced litigant to "win at all costs," including by repeatedly twisting the truth. Moreover, while this court might reasonably dismiss plaintiff's claims based upon these

4

violations alone, it concludes that her complete failure to support her federal claims with citations to relevant authority and/or facts developed in discovery renders the legal issues clear enough that it will simply resolve this case on that basis.

Plaintiff's federal claims seem to be based upon the fundamental misconception that any loss of property suffered by a plaintiff as an alleged result of a clerical error by a state or municipal clerical worker is sufficient to make out a federal due process claim. That is, emphatically, not the case. Indeed, in a February 2021 order, this court noted the stringent limitations established by the U.S. Supreme Court regarding due process claims, writing that:

> It is well established that purely negligent conduct may not give rise to a due process claim, *see Davidson v. Cannon*, 474 U.S. 344 (1986), and this court has previously expressed doubts regarding whether plaintiff will be able to present proof of anything more than negligent conduct in this case. For her part, plaintiff is being given an opportunity to develop proof of a violation of federal law in this case, but, if she is unable to do so, then she would, in the court's view, be well advised to consider cutting her losses in federal court and pursuing her claims in state court. This court can frankly not recall a case similar to this one being brought before it, and it can discern serious problems with allowing federal claims arising out of simple clerical errors by county clerk employees. In so stating, this court notes that the U.S. Supreme Court has been extremely reluctant to recognize civil liability for substantive due process violations, which only apply in the rare cases where official misconduct "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 835 (1998). This is a very high bar for plaintiff to meet in this case, since she has no apparent proof of any personal or other animus against her which might support her bare allegations of "intentional" misconduct. This court struggles to understand any other scenario in which county clerk employees might plausibly be alleged to have committed "conscience shocking" misconduct by failing to provide notice of a tax sale.

[Slip op. at 3].

In *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L.Ed.2d 662 (1986), the U.S. Supreme Court held that the Due Process Clause of the Fourteenth Amendment is not implicated by a simple lack of due care of an official causing unintended injury to life, liberty or property. In other words, where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required. In the companion case of *Davidson v.*

5

*Cannon*, the Supreme Court applied its holding in *Daniels* to bar claims for physical injuries suffered by a plaintiff as a result of a prison officer's negligent failure to protect him from an attack by another inmate. In so ruling, the Supreme Court wrote that:

> Respondents' lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent. *Daniels,* at 331–333, 106 S.Ct., at 665–666. Far from abusing governmental power, or employing it as an instrument of oppression, respondent Cannon mistakenly believed that the situation was not particularly serious, and respondent James simply forgot about the note. The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials.

*Davidson,* 474 U.S. at 347–48.

From the very beginning, this case has struck this court as a likely candidate for the application of the Supreme Court's holdings in *Daniels* and *Davidson*, since its basic facts seem consistent with, at worst, simple negligence by municipal clerks in failing to provide adequate notice of a tax sale. In light of this authority, this court specifically warned plaintiff in a February 2021 order that, to survive a renewed summary judgment motion, she "should be well-armed with federal authority supporting her claims," and it also made clear that she should be able to demonstrate fact issues regarding acts taken by defendants in this case which amount to more than simple negligence. [slip op. at 3].

With regard to this court's challenge that plaintiff cite federal precedent supporting her claims, the closest she comes in her briefing is her citation to the Fifth Circuit's 2006 decision in *In re Paxton*, 440 F.3d 233 (5th 2006). In her brief, plaintiff cites *Paxton* as having "applied *Mennonite Board of Missions v. Adams*, 462 US 791, 798-800 (1983) to find that mailed notice to one joint owner who was the brother of the other joint owner of a tax sale was insufficient to satisfy due process." [Brief at 5]. Tellingly, however, *Paxton* was an appeal of a bankruptcy court decision regarding the validity of a tax sale and not, like this case, a § 1983 damages action

6

against municipal officials who allegedly failed to provide proper notice of a tax sale. This fact aside, plaintiff's citation to *Paxton* and similar authority seems to assume that the question of whether the notice which was provided was adequate is the sole consideration in the due process context. It is not. As discussed previously, *Daniels* and *Davidson* make it clear that, to support a § 1983 damages actions for failure to provide due process, the defendant(s) in question must have acted with something more than simple negligence.

      This court does not question the proposition that if a municipal clerk had *intentionally* failed to provide plaintiff with proper notice of a tax sale, be it out of personal animus, racism, or whatever reason, then that would be sufficient to make out a § 1983 due process claim. Plaintiff has completely failed to make out a coherent case as to how such an intentional, or even deliberately indifferent, violation might have occurred in this case, however. In so stating, this court emphasizes once again that the failure of plaintiff and her fellow heirs to follow the correct heirship procedures after Porter's death left a rather convoluted paper trail regarding ownership of the property at issue, and it appears that this greatly contributed to the confusion which followed. This court further notes that plaintiff's theory of this case is made even more implausible by the fact that two separate municipal clerks' offices allegedly failed to provide proper notice in this case. Indeed, plaintiff has sued both Oxford City Clerk Ashley Atkinson and Lafayette County Chancery Clerk Sherry Wall for failure to provide proper notice, and the notion that two separate municipal clerks might have randomly decided to deprive a citizen of her property by failing to notify her of a tax sale strikes this court as being far-fetched at best.

      In this court's July 2020 order, it stated that it would "out of an abundance of caution, go the extra mile to give plaintiff an opportunity to prove her claims," in spite of its expressed skepticism regarding the viability of any federal claims in this context. [Slip op. at 4]. However,

this court cautioned plaintiff that, if she wished to survive a renewed summary judgment motion, she would need to provide facts developed in discovery which at least created fact issues regarding some sort of heightened misconduct in this regard. [*Id.*] Plaintiff has completely failed to meet this challenge from this court.

In her brief, the closest plaintiff comes to offering factual support for her claims is her argument that:

> Applying the foregoing authority, Sherry Wall and Ashley Atkinson could foresee that a deprivation of Plaintiff's property interest by failing to send the redemption notices to her Cordova, Tennessee address was foreseeable consistent with Jones. Both admitted that there was a substantial risk to Plaintiff that she could lose her property or sustain damage to the title of her property if she did not receive a notice of forfeiture (or right of redemption). Both were aware or inferred that there was a substantial risk to the Plaintiff of loss if they did not transmit a notice of forfeiture or right of redemption. Both decided not to send a notice of forfeiture or right of redemption to Plaintiff. Thus, both were deliberately indifferent or reckless. *Davidson v. Cannon*, 474 US 344, 357-58 (1985).

[Plaintiff's brief at 7].

This court emphasizes that, in quoting this excerpt, it has not deleted any record citations offered by plaintiff. On the contrary, these citations simply do not exist. It is, of course, a fundamental requirement that such record citations be provided in any briefing, and the Fifth Circuit has dismissed appeals based on a failure to provide them. *See, e.g. Moore v. F.D.I.C.*, 993 F.2d 106, 107 (5th Cir. 1993). This court is reluctant to "take the bait" and engage at all regarding arguments which are so obviously deficient, but it notes for the record that the quoted argument is in apparent reference to deposition testimony in which Atkinson was asked generalized questions by plaintiff's counsel about the effect of failing to provide proper notice to a property owner. [Atkinson Depo. at 43-44.] Nothing in Atkinson's testimony can even remotely be considered an admission of any sort of heightened misconduct in this case, and she made it clear that she did not intentionally violate plaintiff's rights. [*Id.* at 53-54]. This court

8

can only assume that plaintiff failed to include deposition citations in her briefing because she did not wish for it to read Atkinson's actual testimony, rather than her misleading characterization of it.

The fact that plaintiff has offered such blatantly deficient arguments regarding the key factual issue in this case, on top of her repeated discovery violations, makes it very difficult for this court to assign any motive other than bad faith to her actions. Regardless of plaintiff's motivations, this court concludes that she has clearly failed to create fact issues regarding any misconduct by defendants in this case which consists of more than simple negligence. Plaintiff has therefore failed to establish fact issues regarding the existence of any due process violation in this case. This court notes parenthetically that, even if plaintiff had established fact issues regarding something more than simple negligence, defendants' briefing offers additional reasons why her federal claims would lack merit, most notably the application of the U.S. Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527 (1981). The Supreme Court's holding in *Parratt* bars procedural due process claims for "random and unauthorized" violations of law by state or municipal employees, when state law provides adequate procedural vehicles for the injured party to seek redress for those violations. *Parratt*, 451 U.S. at 529.

This court concludes that Mississippi law did, in fact, provide legally sufficient avenues for plaintiff to seek redress in this case, since Miss. Code Ann. § 27-43-3 provides that a tax sale may be declared void if "the clerk inadvertently fail[s] to send notice as prescribed in this section." Moreover, Moreover, Miss. Code Ann. § 11-17-31 provides:

> When a person not the rightful owner of any real estate, shall have any conveyance or other evidence of title thereto, or shall assert any claim, or pretend to have any right of title thereto, which may cast doubt, or suspicion on the title of the real owner, such real owner may file a bill in the chancery court to have such conveyance or other evidence of claim of title cancelled….

9

*Id.*

To date, plaintiff has failed to file any state-court action in chancery to remedy what she contends was inadequate notice of the expiration of the redemption period, and the City argues that this is because "such suit would have required her to pay back taxes, so she instead seeks a windfall by transforming state-law redemption requirements into a meritless federal-court lawsuit." [Brief at 1-2]. While the City's theory is certainly consistent with plaintiff's conduct throughout this case, it is unnecessary for this court to ascertain a motive for her failure to seek redress in state court. Whatever plaintiff's motivations, the fact remains that state court was, in fact, the proper forum for her to file her claims, since her federal claims lack any basis in law. *See, e.g. Alexander v. State of Mississippi*, 655 Fed. Appx. 989, 992 (5th Cir. 2016); *Holloway v. Walker*, 784 F.2d 1287, 1291–92 (5th Cir. 1986) (holding that an adequate post-deprivation state remedy satisfies due process when a plaintiff challenges unauthorized conduct by state employees, rather than established state procedure). Indeed, this court notes that there are additional strong bases cited by defendants for dismissal of the federal claims against them, including qualified immunity defenses raised by the individual defendants and the application of the stringent limitations upon municipal liability adopted in *Monell v. Department of Soc. Svcs.*, 436 US 658 (1978) as to the City and County. This court concludes that these defenses are purely "overkill," however, since plaintiff has failed to make out a valid constitutional claim in the first place. Plaintiff's federal claims will therefore be dismissed.

Having dismissed all of plaintiff's federal claims, this court has little difficulty in concluding that it should decline to exercise supplemental jurisdiction over her related state law claims. In her brief, plaintiff writes that the district court "can exercise supplemental

10

jurisdiction" of state law claims such as her claim seeking to void the tax sale,[2] but she neglects to mention that, while this court "can" exercise such jurisdiction, the "general rule favor(s) dismissal of state claims when the federal claims to which they are pendent are dismissed." *See Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). In concluding that it should follow the general rule in this case, this court notes that 28 U.S.C. § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The four § 1367(c) factors are thus listed in the disjunctive, which means that only one of them need be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction. In addition to these statutory factors, federal law also requires consideration of the "common law factors [of] judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).

In the court's view, the statutory factors, as well as the *Cohill* considerations, support declining to exercise supplemental jurisdiction in this case. With regard to the first § 1367 factor, this court concludes that the state law claims in this case involve what are, for it at least, entirely novel issues relating to tax sales, as to which it has no experience whatsoever. While it may be that the issues in this case would not be particularly novel or difficult for Mississippi chancery courts which are used to handling them, that is all the more reason to allow them to do so. Moreover, this court regards comity considerations as being very important in this context, since Mississippi courts have a strong interest in being able to litigate property issues which have been

---

[2] Plaintiff's response to Thik and Thin's motion to dismiss at 5.

11

assigned by statute to chancery courts, without undue interference from federal courts. This is particularly true since the liability of Mississippi municipalities is at issue in this case.

With regard to the second § 1367(c) factor, this court concludes that state law claims predominate in this case, since it is, at its heart, a simple tax sale case which plaintiff has unsuccessfully sought to transform into a federal lawsuit. Finally, this court concludes that the comity factors discussed above constitute "exceptional circumstances" within the meaning of the fourth § 1367(c) factor, and they likewise support a conclusion that the *Cohill* factors are met. Thus, this court concludes that multiple § 1367(c) factors support declining to exercise supplemental jurisdiction over this case, even though only one of them is required in order to do so.

This court will therefore decline to exercise supplemental jurisdiction over plaintiffs' state law claims, and they will be dismissed without prejudice.[3] This court notes parenthetically that, even if it did not decline to exercise supplemental jurisdiction over plaintiff's state law claims, defendants cite multiple other reasons why those claims should be dismissed without prejudice. These reasons include plaintiff's failure to join Sandra Porter as an indispensable party, the fact that this case involves probate issues outside of a federal court's jurisdiction and plaintiff's failure to provide the statutory Notice of Claim required by Mississippi Tort Claims Act (MTCA) claims. *See* Miss. Code Ann. § 11-46-11. With regard to the first issue, this court

---

[3] This court notes that § 1367(d) contains a tolling provision which provides that:
> (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

Thus, the time during which this matter was pending in federal court will not count against plaintiff as it relates to the statute of limitations on her state law claims.

12

notes that plaintiff alleges that her sister Sandra has an ownership interest in the subject property, and she seeks for this court to cancel the tax deeds issued to Thik and Thin and to confirm title in Plaintiff. [*See* Sec. Am. Complaint ¶ 43.]

This court agrees with Thik and Thin that, in addition to filing this action in state court, plaintiff should have included Sandra as a party and that the state law claims would accordingly be dismissed without prejudice even if this court had chosen to exercise supplemental jurisdiction over them. This court further notes that, if it were to retain jurisdiction over plaintiff's MTCA claims, then it would serve as trier of fact regarding those claims. Given the numerous discovery and other violations which plaintiff has committed in this action, she would likely find it very difficult to rebuild her credibility with this court at any such bench trial. This court therefore believes that plaintiff should welcome the opportunity to asset her claims in a state court forum,[4] where, it seems clear, she should have filed this action in the first place.

In light of the foregoing, it is ordered that defendants' motions for summary judgment are granted with regard to plaintiff's federal claims, which will be dismissed with prejudice. This court declines to exercise supplemental jurisdiction over plaintiff's related state-law claims, and those claims will be dismissed without prejudice. It is therefore ordered that defendant's motions [177-1, 179-1,181-1] to dismiss and/or for summary judgment are granted. Plaintiff's motion for extension of time [186-1] is likewise granted.

Having dismissed all of plaintiff's claims, this case will now be closed. However, given that there are still unresolved issues arising out of the Magistrate Judge's sanctions orders, this court will hold off on entering a judgment dismissing this case until those sanctions issues have

---

[4] This court notes that, if it did exercise jurisdiction over plaintiff's state law claims, it would fully apply any requirements of state law in this context, including that plaintiff pay any back taxes owed on the property in question.

13

been finally resolved. In particular, this court notes that the Magistrate Judge found in her Report and Recommendation dated December 3, 2021 that:

> [Plaintiff's] conduct, together with all the other conduct outlined in my prior order and incorporated herein, warrant a recommendation that an award of sanctions in the form of reasonable attorney fees and expenses incurred by defendants' in bringing the motion to compel, including attending the hearing thereon, be made. However, as for a further sanction for spoliation of evidence, including in the form of dismissal or adverse inference, it is my recommendation that that matter remain open pending further factual development, including in the form of plaintiff's sworn testimony at trial, if any.

[Report and recommendation at 8].

In light of this court's order today, there will, of course, be no trial, and this court leaves it to the Magistrate Judge's discretion whether she needs to conduct additional inquiries into sanctions issues or whether she wishes to limit her recommendation on the issue of a specific amount of sanctions to plaintiff's violations which, she finds, are clearly supported by the evidence to date. At any rate, given the Magistrate Judge's far greater familiarity with plaintiff's discovery violations, this court requests that she provide it with a recommendation regarding a total amount of sanctions to be paid by plaintiff in this case. This court notes that plaintiff filed a brief objection to the Magistrate Judge's December 3 R&R, but this court finds her objections to be completely without merit. This court will therefore adopt the Magistrate Judge's findings on the sanctions issue as its own, and it requests, once again, that she provide a final recommendation regarding the total amount of sanctions which are appropriate in this case. To the extent that defendants' motion for sanctions requests a dismissal of this case based on discovery violations, that motion will be partially dismissed as moot in light of this court's order today.

So ordered, this, the 28th day of January, 2022.

14

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**
